**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **ANDREW SALONEN AND** | § | **CIVIL ACTION NO:** |
| **SARA SALONEN** | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DOMETIC CORPORATION** | § | |
| | § | |
| *Defendant* | § | **JURY TRIAL REQUESTED** |

## COMPLAINT

### I.    Parties

1.    Plaintiffs, ANDREW SALONEN and SARA SALONEN, are individuals that now and have been at all times citizens of the state of Ohio.

2.    Defendant, DOMETIC CORPORATION., hereinafter "DOMETIC," is a citizen of the State of Illinois with its principal place of business located in Chicago, Illinois and is a warrantor of the water heater that Plaintiffs purchased and is a merchant in goods of the kind  involved in this case.

DOMETIC's agent for service of process is CT Corporation System, 334 North Senate Avenue, Indianapolis, IN, 46204.

### II.    Jurisdiction

3.    This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

-1-

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiffs's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III.    Venue

4.    Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant is subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

### IV.    Conditions Precedent

5.    All conditions precedents have been performed or have occurred.

### V.    Facts

#### A.    The Transaction

6.    On July 2, 2022, Plaintiffs purchased a new DOMETIC 2022 Forester RV bearing VIN W1X8E33Y4MN175321, hereinafter "FORESTER" from Camping World RV Sales in Summit County, Ohio. The FORESTER was purchased primarily for Plaintiffs's personal use.  The sales contract was presented to Plaintiffs at the dealership and was executed at the dealership.

7.    The sales price of the FORESTER was $112,620, excluding tax, extended warranties and finance charges. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law.   See *Hughes v. Segal Enterprises, Inc.*, **627 F. Supp. 1231, 1238 (W.D. Ark. 1986);** *Chariton Vet Supply, Inc. v. Moberly Motors Co.*, **2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

-2-

### B.   Implied Warranties

8.   As a result of the sale of the FORESTER by Defendant to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the FORESTER would pass without objection in the trade under the contract description, and that the FORESTER was fit for the ordinary purpose for which such motor vehicles are purchased.

9.   Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant. Specifically, the Defendant impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C.   Express Warranties

10.   In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the FORESTER, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the FORESTER had, in fact, repaired the defects.

11.   Plaintiffs' purchase of the FORESTER was accompanied by express warranties offered by the Defendant, DOMETIC, and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs's contract for purchase of the FORESTER.

12.   The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the DOMETIC's warranty booklet and owners manual.

**D.    Actionable Conduct**

13.    In fact, when delivered, the FORESTER was defective in materials and workmanship, with such defects being discovered within the warranty periods.  Many defective conditions have occurred since purchase, including, but not limited to, the following statement in the Plaintiffs's own words:

**"We have experienced significant manufacturing defects related to the electrical and water systems within our defective RV since purchase. No wiring was conducted in the cabin ceiling, and the hot water tank was cracked, causing serious unresolved water damage to the structure. These major issues have shattered my family's trust in the vehicle, jeopardized their safety due to electrical and mold concerns, severely diminished the value of this family investment, and destroyed the plans of traveling the country after concluding 20 years of military service.**

**When I was told to pick up the RV, the service representative said she would be able to get anyone to arrange for the inspection, but I needed to take the RV either way since I was not allowed to store it there.**

**This unit sat over 10 months with standing water in the RV beneath the kitchen, fridge, and bathroom cabinets, it is certain there is long term damage to the floor. FR and Camping World refused to replace this, significantly degrading the safety and value of the RV."**

14.    Since  purchase, Plaintiffs has returned her FORESTER to the Defendant and its authorized warranty service dealers for repairs on numerous occasions.  Despite this prolonged period during which Defendant was given the opportunity to repair the FORESTER, the more significant and dangerous conditions were not repaired.  The Defendant failed to repair the vehicle

-4-

so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the FORESTER, continues to this day to exhibit some or all of the non-conformities described herein.

15.     The defects experienced by Plaintiffs with the FORESTER substantially impaired its use, value and safety.

16.      Plaintiffs  notified the Defendant of the defective conditions in the FORESTER.

**VI.    Causes of Action**

**COUNT 1:    VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

17.     Plaintiffs re-allege and incorporate reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

18.     Plaintiffs are a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

19.     Defendant is a "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

20.     The FORESTER is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

21.     The express warranties more fully described herein above pertaining to the FORESTER is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

22.     The actions of Defendant in failing to tender the FORESTER to Plaintiffs free of defects and refusing to repair or replace the defective FORESTER tendered to Plaintiffs constitute a breach of the written and implied warranties covering the FORESTER and hence a violation of the

Magnuson-Moss Warranty Act.

23.     Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

24.     As a direct and proximate result of the acts and omissions of Defendant, Plaintiffs have been damaged in an amount in excess of $300,000.00 according to proof at trial.

25.     Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorneys' fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## COUNT 2:    BREACH OF EXPRESS WARRANTIES

26.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

27.     The Defendant's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs' FORESTER or those similarly situated were free from inherent risk of failure or latent defects.  In addition, the Defendant issued an expressed written warranty which covered the FORESTER and warranted that the FORESTER was free of defects in materials and work quality at the time of delivery.

28.     As alleged above, the Defendant breached its warranties by offering for sale, and

selling as safe to Plaintiffs a FORESTER that was latently defective, unsafe, and likely to cause

economic loss to Plaintiffs.

29.     In breach of the foregoing warranties, the Defendant has failed to correct said defects.

30.     The damages Plaintiffs have suffered are a direct and proximate result of Defendant's

actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of

repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages;

loss of use; damages; and attorney fees.

### COUNT 3:     BREACH OF IMPLIED WARRANTIES

31.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each

and every allegation contained in the preceding paragraphs.

32.     The Defendant impliedly warranted that Plaintiffs' FORESTER which it designed,

manufactured, and sold, were merchantable and fit and safe for his ordinary use, not otherwise

injurious to consumers, and would come with adequate safety warnings.

33.     Any purported limitation of the duration of the implied warranties contained in the

written warranties given by Defendant is unreasonable and unconscionable and void under the

principles of estoppel, because Defendant knew the defects existed and might not be discovered, if

at all, until the FORESTER had been driven for a period longer than the period of the written

warranty, and Defendant willfully withheld information about the defects from Plaintiffs.

34.     Because of the defects, Plaintiffs' FORESTER is unsafe and unfit for use and has

caused economic loss to the Plaintiffs.  Therefore, the Defendant breached the implied warranty of

merchantability.

35.     The damages Plaintiffs have suffered are a direct and proximate result of Defendant's

actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 4: OHIO CONSUMER SALES PRACTICES ACT

36.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

37.     This claim is for violation of the Ohio Consumer Sales Practices Act, O.R.C. 1345.01 et seq., by the Manufacturer.

38.     Before, during or after one or more consumer transactions between a supplier and a consumer, defendant:

(1)     represented that the subject of a consumer transaction had performance characteristics, accessories, uses, or benefits that it did not have;

(2)     represented that the subject of a consumer transaction was of a particular standard and/or quality when it is not;

(3)     represented that the subject of a consumer transaction had been supplied in accordance with a previous representation, when it had not;

(4)     represented that a specific price advantage existed when it did not;

(5)     knowingly took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's ignorance, or illiteracy or inability to understand the language of an agreement;

(6)     knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;

(7)     required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier; and

(8)     knowingly made a misleading statement of opinion on which the consumer

-8-

was likely to rely to the consumer's detriment.

39.     The Defendant violated the Magnuson Moss Warranty Act in one or more manners, and knew, or should have known that doing so would be unfair to the Plaintiffs, and did it anyway, and that was unfair and/or deceptive and/or unconscionable to the Plaintiffs.

40.     The Defendant breached and/or failed to honor its express and/or implied warranties to Plaintiffs and had a legal obligation to Plaintiffs with no valid legal defense for not performing those obligations, but avoided, or attempted to avoid, one or more of its obligations.  Defendant knew, or should have known, that doing so would be unfair to the Plaintiffs, but did it anyway, and that was unfair and/or deceptive and/or unconscionable to the Plaintiffs.

41.     The Defendant may have committed one or more other unfair and/or deceptive and/or unconscionable acts or practices in its transactions with Plaintiffs within two years prior to the filing of this case.

42.     As a result of the above, inter alia, Defendant committed one or more unfair and/or deceptive and/or unconscionable acts and/or practices in violation of the Consumer Act, before, during, or after a consumer transaction between Plaintiffs and a supplier in relation to the FORESTER.

### VII.    Economic and Actual Damages

43.     Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendant described herein above:

a.      Out-of-Pocket Rule. Recovery of the difference between the price paid and the actual value of the property acquired.

b.      Benefit of the Bargain Rule.  The difference between the value of the goods and services would have had if they had been as promised and their value as

-9-

delivered.

c.       Costs of Repairs.

d.       Loss Profits.

e.       Loss of Use.

f.       Diminished or reduced market value.

g.       Damages for Mental Anguish.

## VIII.    Attorney Fees and Costs

44.     Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorneys' fees based on actual time expended.  As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## IX.   Prayer

45.     For these reasons, Plaintiffs pray for judgment against the Defendant for the following:

a.       All other relief this Honorable Court deems appropriate;

b.       On the first claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for more than $50,000 and in such amount as may be proven at trial;

c.       On the second claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

d.       On the third claim, damages and/or statutory damages, and other damages,

-10-

remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

e.    On the fourth claim, statutory remedies and relief and damages under the law, $200.00 statutory damages, or three times such actual damages, whichever is greater, and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

ALTERNATIVE PRAYER FOR RELIEF

f.    Or, in the alternative to the damages set forth in the prayer above on any appropriate claim as proven by the evidence and allowed by law, an Order requiring Defendant to repurchase the subject vehicle and pay compensation to Plaintiffs as appropriate under applicable laws and such other relief as deemed proper and lawful by the Court, plus all damages and/or statutory remedies and relief as deemed proper, equitable and lawful by the Court, for each and every violation which may be proven at trial;

g.    Plus on each and every claim, expenses of suit and litigation, interest from the date the contract was consummated, and an Order finding Plaintiffs to have rightfully revoked acceptance, and rightfully rescinded, reasonable attorney fees, plus all costs, and any and all other legal and equitable relief deemed necessary and just.

## X.    Demand for Jury Trial

46.    Plaintiffs hereby demand a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS

-11-